UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GLORIA WINKLER HOLMES,

       Plaintiff,

v.             Case No. 11-CV-211-JPS

FEDERAL DEPOSIT INSURANCE
CORPORATION,
GAYLE WINKLER KOCH,
GARRY R. WINKLER, and
GREGORY R. WINKLER,     ORDER

       Defendants.

On February 9, 2012, defendant Federal Deposit Insurance Corporation ("FDIC") filed a Motion to Dismiss for Lack of Jurisdiction (Docket #38). This case arises from a dispute over a series of three trusts established by the late Robert C. Winkler. Plaintiff Gloria Winkler Holmes ("Holmes") is a beneficiary of each trust, while First Banking Center ("FBC") and defendant Gayle Winkler Koch ("Koch") are co-trustees.[1] Holmes originally brought this action in Wisconsin state court, alleging conflict of interest, breach of fiduciary duties, failure to diversify investments, intentional misrepresentation, strict liability misrepresentation, and also seeks punitive damages and an accounting. Holmes also seeks attorneys' fees. Defendants Garry R. Winkler and Gregory R. Winkler, also

---

[1]One of these trusts was a revocable living trust that, upon Robert C. Winkler's death, was to be divided into two "Family Trusts," each to be divided into shares. FBC and Koch were named co-trustees of the Family Trusts, and Holmes is an ultimate beneficiary. For simplicity here, the court will simply treat the revocable trust and resulting Family Trusts as one trust.

beneficiaries, filed substantially similar cross-claims against FBC. While pending, the State of Wisconsin Department of Financial Institutions closed FBC and the FDIC was statutorily appointed as receiver. The FDIC was then substituted for FBC as defendant. After substitution, the FDIC removed the case to this court on February 25, 2011.

After removal, the court declined to remand the case back to state court. The court also granted the FDIC's motion for a stay pending exhaustion of the administrative claims process. The administrative claims process has concluded, and the FDIC now asks the court to dismiss this action because Holmes, Garry Winkler, and Gregory Winkler (collectively, "Claimants") have allegedly failed to comply with the statutory requirements to continue this suit. The court agrees and will dismiss the claims against the FDIC as they are now barred by the statutory limitation period on continuing actions.

A defendant may move to dismiss a case for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A factual challenge to jurisdiction asserts that, despite the formal sufficiency of the complaint, there is in fact no jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). As such, the court is permitted to look beyond the complaint to determine the fact of jurisdiction. *Id.* Under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), there is an administrative claims process through which the FDIC may set a claims bar date and has 180 days from a claim's filing to make a determination. 12 U.S.C. § 1821(d)(3), (d)(5)(C), (d)(5)(A)(i). No court has jurisdiction to hear claims against the FIDC as receiver except as provided for under FIRREA. 12 U.S.C. § 1821(d)(13)(D). The provision permitting judicial review states

that a claimant "may" either request administrative review, "or file suit on such claim (or continue an action commenced before the appointment of the receiver)" in a district court. 12 U.S.C. § 1821(d)(6)(A). Such review must be initiated or continued within sixty days of either the disallowance of a claim or the end of the 180-day period provided to the FDIC for making a determination. 12 U.S.C. § 1821(d)(6)(A). If a claimant fails to initiate or continue a lawsuit within that sixty-day period, the claim is deemed disallowed, the disallowance is final, "and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B). Here, the court's order (Docket #36) staying the case did so until either the disallowance of the last-filed claim or expiration of the 180-day period following the last-filed claim. The order also required that the parties notify the court in writing when any condition for lifting the stay had been satisfied. The FDIC argues that the Claimants have failed to continue this action within the period required by FIRREA and this court, therefore, has no subject matter jurisdiction. This conclusion, and the Claimants' opposition, turn on the statutory term "continue" and whether the Claimants were required to take affirmative action after expiration of the stay in this case.

As noted, FIRREA requires that a claimant file or "continue" a suit within the prescribed sixty-day period, else lose all entitlement to judicial review. 12 U.S.C. § 1821(d)(6). With no Seventh Circuit precedent on point, at issue here is a case from the Eleventh Circuit in which the court held, "where the district court entered a stay of definite duration, claimants need not take affirmative action to 'continue' a suit which was filed before the appointment of the receiver: the suit goes on when the stay expires." *Aguilar v. F.D.I.C.*, 63 F.3d 1059, 1062 (11th Cir. 1995) (emphasis omitted). A number

of district courts, on the other hand, have found that an affirmative act is indeed required in order to continue a suit, though not in the context of a definite stay. *Dougherty v. Deutsche Bank Nat'l Co.*, No. 11-CV-93, 2011 WL 3565079, at *4-6 (E.D. Pa. Aug. 12, 2011); *Santiago-Morales v. F.D.I.C.*, No. 10-1702, 2011 WL 3607889, at *2-3 (D.P.R. Aug. 15, 2011); *Laureano-Vega v. F.D.I.C.*, No. 10-1650, 2011 WL 3475313, at *2-3 (D.P.R. Aug. 8, 2011); *Reyes v. F.D.I.C.*, No. 10-1660, 2011 WL 2604762, at *2-3 (D.P.R. June 30, 2011); *Lakeshore Realty Nominee Trust v. F.D.I.C.*, No. 91-55, 1994 WL 262913, at *1-2 (D.N.H. May 25, 1994). One district court did find an affirmative action was required to continue after the lifting of a definite stay. *Seymour v. F.D.I.C.*, No. 07-CV-552, 2009 WL 3427456, at *1 (S.D.W. Va. Oct. 23, 2009).[2] In *Aguilar*, the district court dismissed an action that it had stayed for 180 days in order to allow exhaustion of the administrative process. 63 F.3d at 1061. Nearly two years after the stay lifted, the district court found that the plaintiffs had failed to take any action to "continue" the case within the sixty-day window. *Id.* The Eleventh Circuit disagreed, finding that the action continued automatically upon expiration of the stay, noting that the result "reflect[ed] the usual practice in American courts when stays are issued." *Id.* at 1062.

The *Aguilar* court went on to discuss the comparison of Sections 1821(d)(6) and 1821(d)(8). *Id.* As previously noted, subsection (d)(6) requires a claimant to "continue" a suit after determination (or non-determination) of a claim. 12 U.S.C. § 1821(d)(6). On the other hand, subsection (d)(8)

---

[2]The FDIC also cites to two unpublished orders from cases in the Northern District of Illinois, but the court is not particularly convinced of those case's helpfulness simply because of the lack of analysis regarding the issue. (*See* App'x of Unpublished Authorities, Ex. 5 & 8) (Docket #39-1).

establishes a procedure for the expedited determination of claims; specifically, such expedited relief may be requested by those who allegedly hold a perfected security interest, or allege that "irreparable injury will occur if the routine claims procedure is followed." 12 U.S.C. § 1821(d)(8)(A). The expedited procedure also contains a provision for judicial review after its exhaustion, specifically that a claimant who has filed for expedited relief "shall be permitted to file a suit, *or to continue a suit filed before the appointment of the receiver*" after denial of the claim or expiration of the ninety-day decision period. 12 U.S.C. § 1821(d)(8)(C) (emphasis added). This language is nearly identical to that of subsection (d)(6). 12 U.S.C. § 1821(d)(6)(A). Again, the expedited procedure also contains a limitations period for initiating or continuing judicial review, specifically that "[i]f an action…is not filed, or *the motion to renew a previously filed suit* is not made," the claimant loses any right to judicial review. 12 U.S.C. § 1821(d)(8)(D) (emphasis added). Additionally, the FIRREA legislative history notes that "[a]fter exhaustion of streamlined administrative procedures…[a]ny suit (*or motion to renew a suit* filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim." H.R. Rep. No. 101-54, at 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 (emphasis added).

The *Aguilar* court first decided that FIRREA "does not say what a claimant must do to 'continue'…an action." 63 F.3d at 1062. It then wrote that Congress was precise in its choice of words and that because subsection (d)(8)(D)—the limitations provision—specifically contemplated a "motion to renew," whereas subsection (d)(6)(B)—the other limitations provision—did not, Congress could not have intended for a claimant to take an affirmative action in order to continue an action under subsection (d)(6). *Id.* The court

also dealt briefly with the legislative history, noting that its focus was not on what was required to "continue" an action, and that the suggestion that the statute requires a motion to renew was an "isolated statement buried in the legislative history [that was] not enough to amend the language used (or not used) in the statute, nor enough to alter the well-established expectations of litigants that when a stay expires, a suit is automatically active." *Id.* at 1062 n.2. The court further reasoned that "nothing in the statute explicitly… [requires] a claimant to take additional affirmative steps to let the FDIC and the federal court know the claimant is serious about its preexisting (but temporarily suspended) lawsuit." *Id.* at 1062.

Naturally, the Claimants argue in favor of the Eleventh Circuit's interpretation of the statute. However, the court is not persuaded that a claimant need do absolutely nothing in order to avoid the limitations bar. The primary inquiry here is not whether a claimant is required to "continue" an action—the statutory language is clear on that point—but whether the automatic lifting of a stay qualifies as continuation. There is a further nuance, however, that leads the court to respectfully disagree with the Eleventh Circuit. FIRREA requires the *claimant* to continue an action. The statute does not phrase the limitations period as operating when "an action fails to continue," but when "any claimant fails to…continue an action." The automatic lifting of a defined stay may continue an action by its inherent definition, but it is not continuation by act of the claimant. The automatic lifting of a stay is, at best, the *court* continuing an action by operation of its earlier order. Even if a stay is lifted, a claimant could still have the action dismissed for failure to prosecute if he or she continued to do nothing. Thus, it is unclear how, without any act, a claimant could be considered to have

continued a case merely through the automatic lifting of a stay. Moreover, this conclusion is bolstered by the language of subsection (d)(6)(A), which states a claimant "may" continue an action. Continuance by operation of a stay's automatic lifting provides no choice on the part of the claimant whether to continue the action or not.

The court also respectfully disagrees with the *Aguilar* court's finding that subsection (d)(8) supports the notion that a claimant need do nothing in order to continue an action. First, FIRREA is indeed silent on how "continue" is defined within the context of subsection (d)(6), while subsection (d)(8)(D) implies that to "continue" requires a motion to renew. However, that omission cannot mean that the term "continue" in one subsection means nothing, while having the opposite meaning two subsections later. Instead, the court agrees with the Southern District of Florida that the parallel structure of subsections (d)(6) and (d)(8) imply that the term "continue" used in subsection (d)(6) must have at least a similar meaning to the term "continue," and the nearly identical phrasing, found in subsection (d)(8). *First Union Nat'l Bank of Fla. v. Royal Trust Tower, Inc.*, 827 F. Supp. 1564, 1567-68 (S.D. Fla. 1993) (no reasoned explanation why similar clauses should be treated differently on basis of separate paragraphs).[3] That subsection (d)(8) goes on to state an explicit method of continuing a case does not mean that

---

[3]Toward the end of their brief, the Claimants argue that *Aguilar* overruled *First Union*, among other 11th Circuit district court cases. However, despite the lack of any discussion of *First Union*, to the extent that *Aguilar* did overrule that case, this court still agrees with the district court's reasoning. Any overruling by *Aguilar* is no more persuasive than *Aguilar* itself.

to "continue" under subsection (d)(6) has no meaning, or at least one radically different.[4]

The *Aguilar* court also wrote that nothing in FIRREA requires a claimant to take additional affirmative steps to show he or she remains "serious" about the earlier-filed lawsuit, but subsection (d)(8) contradicts that conclusion. That subsection deals explicitly with claimants who (at least allegedly) hold claims that are *more important* than most, as illustrated by both the requirement of a perfected security interest or irreparable harm, as well as the entitlement to expeditious decision. Yet that section also requires an explicit motion to renew in order to "continue" the action. It would be an incongruous result to find that Congress intended those claimants with more important claims to take affirmative steps in order to "continue" an action, but that a claimant with less important claims (at least in the eyes of congressional policy) is not required to do anything to avoid the statute of limitations. In this light, the legislative history fully supports this conclusion, referring to a motion to renew when discussing continuation of an action, all the while making no distinction between expedited and non-expedited claim procedures.[5]

---

[4]To the extent the *Aguilar* court found subsection (d)(6)'s use of "continue" to have some meaning in the narrow context of an indefinite stay, the court explains below why that distinction is not persuasive.

[5]The court also notes that in these situations it is often the FDIC that requests a stay pending exhaustion of the administrative process. It does not appear common that the claimant is the one choosing between a request for a definite or indefinite stay. Thus, the distinction is weakened further because a claimant is likely just as serious about his or her suit when an indefinite stay is entered as when a court enters one of definite duration.

The *Aguilar* court did limit its holding to those cases in which a stay of definite duration is entered, as opposed to an indefinite stay. However, this court disagrees that the distinction supports the Eleventh Circuit's decision. Such a distinction finds no direct support in the text of FIRREA or its legislative history. Moreover, there appears little reason why a claimant should be expected to take any action to lift an indefinite stay if it is not required to take any action *after* an automatic stay is lifted.[6] After all, as the *Aguilar* court itself noted, a court maintains jurisdiction over a stayed case—it is merely suspended. As such, what purpose is there in requiring a claimant to take an affirmative step to lift a stay, but not requiring any action if a stay is lifted automatically? The case is ongoing, though in different states, in both situations. The automatic lifting of a stay does no more to signal a claimant's intent to continue with the judicial process after the FDIC's treatment of the claims than does a claimant sitting on his or her hands while an indefinite stay persists. In both cases, the claimant has remained silent, despite the completion of administrative procedures.

As such, the court is persuaded that some affirmative action is indeed required in order for a claimant to continue a case. The Claimants took no such action here. What's more, the stay in this case explicitly required the parties to inform it in writing when one of the conditions for lifting the stay had occurred. The Claimants did not even take that action. The Claimants argue that only the FDIC could know when the conditions of the stay's expiration had been met, but that argument ignores that all parties were

---

[6]The *Aguilar* court did note that, despite the automatic continuation of a case when a defined stay expires, a claimant is still required to participate in the case post-continuation. However, this states nothing more than the ever-present threat of dismissal for failure to prosecute.

aware of the claims bar date, February 24, 2011, and the fact that the latest possible date by which the sixty-day period could begin running was August 23, 2011 (180 days past the claims date—the period after which the FDIC's failure to act on a claim triggers the sixty-day limitation period). The Claimants failed to take any action even by sixty days after that last possible date, i.e., by October 23, 2011; or by any date up until the FDIC's motion for that matter, over three months past the end of the sixty-day limitation period. Though the parties dispute whether Gregory R. Winkler even submitted a claim to the administrative process, even if he had, his claims too would be barred under the court's conclusion. Having received no decision from the FDIC within 180 days (assuming he filed on the claims bar date), the limitation period would have similarly required him to continue his action within sixty days of August 23, 2011.

Thus, it is unclear how the Claimants could have continued this case when they failed to even adhere to the order. While the order did not specify that only the Claimants were required to inform the court, viewing the FDIC's failure as an exception to the statutory burden on the claimant makes little sense. The statute of limitations does not place the burden on the FDIC or the court. Further, in denying the claims, the FDIC sent notices of disallowance that specifically referenced the sixty-day limitation period and the need to take action or lose any further remedy. While not inherently dispositive, the notices refute the Claimants' argument that the FDIC was lying in wait for the sixty-day period to expire before ambushing them with a motion to dismiss after its expiration. As such, the court finds that the Claimants failed to take any sufficient action in order to "continue" this suit within the meaning of the FIRREA sixty-day limitation period.

The Claimants make a handful of other arguments that do not carry the day either. First, they argue that this result would distort the definition of a stay because a stay only temporarily suspends an action. While true, that argument stretches beyond the bounds of even *Aguilar*. *Aguilar* recognized that the limitation period operates at least when there is an indefinite stay. But if the court gave the Claimants' argument credence as presented, that would mean that the limitation period would not run even during an indefinite stay. The corollary of the understanding that a stay only temporarily suspends an action is that a party need take no action related to the case during a stay. Thus, a claimant, under the typical definition, would not be expected to "continue" or affirmatively act *during* the stay, regardless of its length, else such a requirement would also "distort" the definition. That understanding goes beyond *Aguilar*. The reason a claimant is expected to act is because the statute imposes that duty. The court here is merely concluding that the automatic lifting of a stay is not a continuation of the action *by the claimant*; it does not disturb the understanding that an action is temporarily postponed while a stay is in effect. To the extent the Claimants' argument is meant to mirror that of the *Aguilar* court's, that automatic continuation after the lifting of a stay merely reflects "the usual practice in American courts when stays are issued," the court disagrees for much the same reason. If the FIRREA limitation period is not intended to disturb the usual practice when stays are issued, *Aguilar*'s acceptance that the limitation period may expire during an *indefinite* stay contradicts that usual practice. In other words, a suit normally remains pending while stayed, regardless of the stay's duration.

The Claimants also mention that the FDIC is urging the court to hold that claimants must adhere to a "mere suggestion" in the legislative history of FIRREA, "which all litigants are presumed to have access to and have read," and that to do so would decide the motion on a procedural technicality. As the FDIC points out, statutes of limitation are hardly procedural technicalities, and ignorance of the law is not a defense. The Claimants argue that the holding here would ignore the purpose of FIRREA to protect the interests of creditors that have followed the rules and that the statute is not intended to be used as a way to avoid consideration of claims on the merits. But these arguments presume the Claimants followed proper procedure in the first place and, as discussed above, they neither alerted the court as to the exhaustion of the administrative process, nor did so in the face of explicit warning from the FDIC. There is nothing here to suggest that the Claimants are being treated unfairly.

As such, the court will dismiss all claims against the FDIC for lack of jurisdiction. There remain, however, claims against defendant Gayle Winkler Koch which presumably are state-law claims. Once a court has dismissed all claims over which it has original jurisdiction, it is within the court's discretion to dismiss or remand the supplemental state-law claims. 28 U.S.C. § 1367(c)(3). Should the remaining claims in fact be solely state-law claims, the only source of original jurisdiction would be diversity jurisdiction under 28 U.S.C. § 1332.. Diversity of citizenship is satisfied here. That provision also requires the amount in controversy to exceed the value of $75,000.00, and it is not entirely clear from the pleadings that the remaining claims will satisfy that requisite. Should there be a lack of original jurisdiction, the court finds the wiser exercise of discretion would be to remand this action to state

court. However, in order to avoid acting prematurely, the court will allow the remaining parties an opportunity to show cause why the amount-in-controversy requirement is satisfied.

Accordingly,

IT IS ORDERED that the defendant's Motion to Dismiss for Lack of Jurisdiction (Docket #38) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that all claims against defendant Federal Deposit Insurance Corporation be and the same are hereby DISMISSED with prejudice for lack of jurisdiction; and

IT IS FURTHER ORDERED that the remaining parties shall show cause why the amount-in-controversy requirement for diversity jurisdiction exists in the remainder of this action, else the court will remand the remaining state-law claims.

Dated at Milwaukee, Wisconsin, this 6th day of April, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge